### SEYMOUR SELLICK *vs.* HORATIO G. MUNSON.

A. having conveyed to B. real estate, as security for having become surety for debts of A. and B. having gone into the possession thereof, *Held,* that the rents were incident to the estate, and constituted a part of the security as much as the estate itself, and could not be recovered of B. until he is discharged of his liability as such surety.

*ASSUMPSIT,* for goods sold and delivered, and for money had and received. Plea, the general issue.

*Addison*,
January,
1826.

Sellick
*vs.*
Munson.

On the trial of the issue, at the January term of this Court, 1825, the plaintiff called a witness, who testified, that in October, 1821, as agent for the plaintiff, he called on the defendant, to furnish a statement of the account between the plaintiff and defendant, and that the defendant furnished an account, by which it appeared, that there was a balance due to the plaintiff, of $204,00, or thereabouts.

That in February, 1822, the witness, as agent of the plaintiff, called on the defendant again for a statement of the account between the parties. The defendant then furnished another statement, varying from the statement made the preceding October, leaving a less balance due to plaintiff, by reason of the defendant having paid money for the plaintiff's use, in that time, which left a balance due the plaintiff, of $119,26. Both the above statements were furnished at *Pottsdam*, in the state of New-York.

The witness also testified, that in the same month of February, 1822, he saw the parties together in *Newhaven*, Vt. and by their direction made out a statement of the accounts, by which it appeared, that a balance of $121,08 was due to the plaintiff; but it was then agreed, that $3,50 should be deducted, in case the parties then came to a final settlement, which left a balance of $117,58 due the plaintiff.

The witness testified further, that when he called on the defendant in February, 1822, at *Pottsdam*, he proposed to the defendant to purchase the plaintiff's store in *Pottsdam* and apply the purchase money in payment of certain demands against the plaintiff, on which the defendant was holden as surety, and what that and the balance then in the defendant's hands fell short of paying those demands, the witness, as agent of the plaintiff, offered to advance in money. But the defendant did not accept the proposition.

The demands which were against the plaintiff, and on which the defendant was holden as surety, amounted to six or seven hundred dollars, and fell due the 7th October, 1821 ; and by the agreement of the parties, any balance then in the hands of the defendant was to be by him applied in payment of those demands. The witness further testified, that when the parties were together at *Newhaven*, in February, 1822, the plaintiff proposed to the defendant to deliver or pay over to him $350, to apply in payment on the demands above mentioned against them both, if the defendant would give security that the application of that sum, and also the balance of $117,58 should be so made, which the defendant refused to do. That the said sums of $350 and $117,58 would fall short of paying the demands against both, about $200, and the defendant required the plaintiff to give security for that, which the plaintiff refused to do, and the attempt at a settlement ended.

The witness further testified, that the rents charged in the plaintiff's account, accrued on account of the store in *Pottsdam*.

The defendant insisted, that the plaintiff was not entitled to recover for the rents charged, and showed an absolute deed from

*Addison,*
January,
1827.

Sellick
*vs.*
Munson.

the plaintiff to the defendant, of a store in *Hopkinton*, N. Y. and introduced testimony to prove, that the store in *Portsdam* was had in exchange for the store in *Hopkinton*. And it appeared in evidence, that the deed of the store in Hopkinton was given to indemnify the defendant for becoming bail for the plaintiff, on his being arrested, in a certain case, which was settled by the plaintiff. And it further appeared, that it was also to remain a security to the defendant, for signing as surety for the plaintiff, on the demands before mentioned.

The defendant insisted, that as the real estate, on which the rents charged in the account accrued, was mortgaged by the plaintiff to the defendant, as an indemnity for becoming surety for the plaintiff on certain demands, those rents, as incident to and growing out of the estate so mortgaged, are not recoverable until the defendant was indemnified for those demands.

And the defendant offered the record of a judgment of Addison county court, to show, that at the time the present suit was commenced, one of the notes signed by the defendant as surety for the plaintiff, as an indemnity against which said mortgage was given, was unpaid.

The court decided and charged the jury, that although rents, as such, could not be recovered in this form, yet as it appeared that the defendant had paid money for the plaintiff to a considerable amount, without a specifick application to any particular account, but credited to plaintiff in his account current, the plaintiff had a right to apply the payment to the rents, and recover for other charges, to the amount of the balance stated to be due.

Verdict for the plaintiff. The defendant having excepted to the foregoing opinion of the court and direction to the jury, now moved the court, that the verdict be set aside, and for a new trial.

*Phelps*, in support of the motion. The charge of the court with respect to the rents, was incorrect.

The rents of the store followed the condition of the real estate. The defendant being a mortgagee in possession, was not holden to pay over the rents until he was indemnified. Nor could he apply the payments made by the defendant to the rents, for in doing so he deprives the defendant of his security.

It was argued, that whatever there might be in the defendant's hands, should be applied to the demands for which the defendant was bound with the plaintiff. This authorized the application of the payments to the other items in the account.

But even without this argument, the defendant was at liberty to set off the payments he had made against the absolute claims of the plaintiff, and retain the rents until he was fully indemnified. Besides, the plaintiff could not set off the rents against the payments made by the defendant, unless he could sue for and recover the rents as such.

Finally, the general rule authorizing the creditor to apply payments, where the debtor does not designate, does not apply to

*Addison,*
*January,*
1826

*Sellick*
*vs.*
*Munson,*

demands not due or payable. In this case, as the defendant was not yet indemnified from his suretyship, the rents of the property mortgaged were not demandable by the plaintiff.

He also insisted, that the charges for rents could not be recovered in this form of action.

*Bates,* contra. It appears in the case stated by the judge, that in October, 1821, the defendant, by his own showing, was indebted to the plaintiff in account $204,00 ; that this sum was lessened afterwards to $117,58, which was the balance at the time the suit was commenced, in favour of the plaintiff.

It appeared further, that the defendant had previously signed with the plaintiff as surety upon a debt of 6 or 700 dollars, and had taken a conveyance of a store and land of the plaintiff's for security. It appeared further, that this last debt fell due on the 7th October, 1821, and that the defendant had promised the plaintiff to pay whatever balance might be in his hands at that time, upon the said debt. The defendant not having paid the money on the demand according to this agreement, the plaintiff brought this suit to recover it out of his hands.

And the plaintiff insists, that the defendant having in his hands a sum of money to be applied for his benefit on a particular demand, and having failed so to apply it, must be considered as holding the money for the plaintiff's use.

And this is not only technically correct, but no other principle would do justice between the parties ; as the defendant had failed to do it, it was necessary for the plaintiff to collect the money and apply it on the debt, in order to be able to meet the residue.

A considerable portion of the credits given by the defendant to the plaintiff in said account, consists of rents for said store and land ; and the first point made by the defendant is, that the lands being pledged to secure a debt on which he is surety, the rents growing out of those lands cannot be recovered till that debt is paid. The answer is, that they may or may not, according to the *contract* of the parties. It appears that the defendant himself brought forward these rents as a part of the account, and admitted he was to have applied the balance in payment of said debt. The debt, instead of the security, would have been lessened by this application of the rents. Though it is not pretended but the real estate was a sufficient security ; from the letters and other evidence, it appears to have been more than twice the value of the debt. At all events the defendant so contracted, and that is sufficient.

Another objection of the defendant is, that the article of rents cannot be recovered in this form of action.

As to this, the charge of the judge is supported by a very familiar principle of the law, viz. that when the payor does not make an application of money paid to any particular debt, the payee may do so. The defendant, as appears by the account,

20

CASES IN THE SUPREME COURT .

*Addison*,
January,
1826.

Sellick
*vs.*
Munson.

had advanced large sums to and for the plaintiff, without making any application. The plaintiff having a claim for rent, had a right to apply those sums on that claim, as far as it goes.

The opinion of the Court was pronounced by

PRENTISS, J. It is very obvious, that if the plaintiff, in a proper form of action, could not recover the rents arising from the store in *Potsdam*, he was not entitled to recover in this case ; for exclusive of the rents, there appears to have been no balance due him. This right to recover, therefore, must have depended on his right to demand the rents. If he could not call the rents out of the defendant's hands by a suit, he could not apply the monies paid and advanced to him by the defendant, in satisfaction of the rents, and in this way extinguish the defendant's credit for advances, and create a balance in his favour which he might demand and recover. He could not thus do indirectly, in effect, what he could not be permitted to do directly. The objection does not go to the form of action merely, but to the plaintiff's right to demand the rents. The store, from the occupation of which the rents accrued, having been conveyed to the defendant, as his security for having become surety for the plaintiff, the plaintiff could no more recover the rents issuing out of the estate so held and possessed by the defendant, than he could recover the estate itself, until he had discharged the defendant from his liability as surety. The rents grew out of, and were incident to the estate, and constituted a part of the defendant's security, as much as the estate itself. The agreement between the parties, that the balance in the defendant's hands in October, 1821, should be by him applied in payment of the debts for which he had become surety, could not have the effect to discharge his lien upon the balance, as far as it respected the rents, but was rather in affirmance of it. By the agreement, the balance was not to be withdrawn from the defendant by the plaintiff, but was to remain in the defendant's hands, for his security, and to be by him applied to reduce the debts for which he was holden, and thus relieve himself from so much of his liability. The plaintiff, therefore, could not appropriate the balance, so far as concerned the rents at least, to a different purpose, and thus deprive the defendant of a part of his security, which he might do, if he could call the balance out of the defendant's hands. The plaintiff might have discharged the defendant from his liability, and then perhaps have recovered the balance which the rents would create in his favour. But it appeared that the debts were still outstanding and unpaid, and until they were discharged, the plaintiff had no right of action. If the monies advanced by the defendant had been paid on the debts for which he was surety, the payments might have been applied to the rents ; but this does not appear. Indeed, the case is quite imperfect in many respects ; but from what we can collect from it, we think the direction to the jury was

wrong, and that the verdict must be set aside, and a new trial granted.

New trial granted.

*R. B. Bates, D. Chipman,* and *Geo. Chipman,* for the plaintiff.
*Jos. C. Bradley* and *S. S. Phelps,* for the defendant.